WALDROP v. GOLTZMAN. (No. 7923.)

(Court of Civil Appeals of Texas. Dallas. March 30, 1918.)

1. TROVER AND CONVERSION ☞36—EVIDENCE —ADVANCED PRICE.

In suit for the conversion of scrap iron purchased by plaintiff, plaintiff's testimony that between the time of his purchase and the time of defendant seller's alleged conversion the price of scrap iron had advanced was admissible to show a reason for the alleged conversion.

2. TROVER AND CONVERSION ☞39—MARKET VALUE—EVIDENCE.

In suit for the conversion of scrap iron purchased by plaintiff of defendant, letters addressed to plaintiff and purporting to have been signed by an iron and metal company, stating what such company would pay for scrap iron, were inadmissible to show the market value of the iron at the time and place of the conversion, since evidence of isolated sales or offers to sell or offers to purchase at a certain price are inadmissible to establish market value.

3. EVIDENCE ☞489 — TROVER AND CONVERSION ☞34(2) — MARKET VALUE — PROOF — WITNESS.

In cases of conversion of personal property, the market value of the property at the place and date of conversion must be shown to warrant recovery, and a witness to such value must show he was acquainted with the market value of the property at such time and place as a prerequisite to admission of his testimony.

4. EVIDENCE ☞155(8)—ADMISSION OF EVIDENCE—AUTHORIZATION.

In suit for conversion of scrap iron purchased by plaintiff from defendant, the fact that

it was developed on cross-examination, that plaintiff had in his pocket letters from an iron company offering so much a ton for scrap iron, and was called on by defendant's attorney to let him see them, who then proceeded to ask questions as to plaintiff's knowledge as to who wrote them, etc., did not authorize the submission of such letters in evidence by plaintiff; defendant objecting all the time to their introduction.

5. APPEAL AND ERROR &⪯302(1) — ASSIGNMENTS OF ERROR—SUPPORT BY MOTION FOR NEW TRIAL.

Assignments of error complaining of matters not embraced in appellant's motion for new trial in the court below will not be considered.

Appeal from Freestone County Court; G. W. Fryer, Judge.

Suit by Max Goltzman against R. H. Waldrop. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

D. T. Garth, of Teague, for appellant. Geppert & Wroe, of Teague, for appellee.

TALBOT, J. The appellee sued the appellant, alleging, in substance, that he purchased 40 tons of scrap iron, consisting of cast iron, old stoves, steel rods, iron parts of plows and wagons, etc., from appellant at and for the sum of $142.50; that a part of the scrap iron was sold to appellee at $4 per ton, and the balance at $3.50 per ton; that he made two payments of $20 and $50, respectively, thereon; that by the terms of the contract of purchase appellant was to hold possession of the property for appellee until the same could be loaded on cars at Teague, Tex., when the balance of the purchase price, $72.50, was to be paid; that on November 29, 1916, appellee tendered to appellant the said $72.50, and demanded possession of the scrap iron; that appellant not only failed and refused to deliver said property, but then and there converted the same to his own use and benefit. Appellee further alleged that the reasonable market value of the scrap iron at the time and place of its conversion by appellant was $7 per ton, or in the aggregate $280. Appellee's original petition was filed November 30, 1916. On the same day he sued out a writ of sequestration which, according to the officer's return, was levied immediately upon 40 tons of scrap iron of the description of that mentioned in the petition. Appellant replevied the property as authorized by statute, giving bond in the sum of $520, with J. R. Chumney and J. C. Williams as sureties, and sold and shipped the same to parties at Waco, Tex., from whence it was shipped to some point in Colorado. After the levy of the writ of sequestration and the date of the officer's return indorsed thereon it seems some question arose as to whether 40 tons of scrap iron had been in fact seized by said writ, and appellee, on the 25th day of January, 1917, filed an amended original petition in which he alleged, in addition to the matters stated above, that at the time he paid appellant the

$50 mentioned appellant represented to him (appellee) that he (appellant) had on hand the 40 tons of scrap iron, and that in making the said payment of $50 on the purchase price thereof appellee believed and acted on said representation, and that in the event appellant did not have 40 tons of scrap iron as represented, and there were less than 40 tons sequestrated, appellee owned and was entitled to the possession of such of said scrap iron as had been sequestered, and asked that in case appellant failed to return the same to abide the judgment of the court he (appellee) have judgment against appellant and his bondsmen for the value of said property sequestrated, and against appellant "individually for the sum of the difference in the amount of 40 tons and the amount defendant (appellant) had on hand, at the sum of $3.50 per ton which was plaintiff's (appellee) profit per ton, and that the defendant be given credit on said last amount for said sum of $72.50, which plaintiff owes defendant."

The appellant pleaded a general denial and specially, in substance, that on May 8, 1916, he had on hand about 8 tons of scrap iron and agreed to sell the same to appellee for $4 per ton; that appellee agreed to buy and deposited with him (appellant) $20, to be forfeited in the event appellee failed to take the scrap iron by the 1st day of June, 1916; that in the meantime scrap iron declined in value, and appellee refused to take the eight tons which he had agreed to take, and forfeited to appellant the deposit of $20; that thereafter, on the 30th day of October, 1916, appellant had about 28 tons of scrap iron which appellee agreed to purchase at $3.50 per ton, and put in appellant's hands as a forfeit $50, agreeing to load the scrap iron in cars on the following Monday, and to pay the remainder of the purchase price when so loaded; that on the day the scrap iron was to be loaded appellee came to appellant and stated that he could not sell the iron for what he had agreed to pay for it, and was therefore forced to abandon his proposed purchase and forfeit to appellant the $50 deposited with him; that appellee and appellant then entered into an agreement to the effect that appellant was to sell the scrap iron and account to and pay appellee all that scrap iron sold for over and above the amount which he (appellee) had agreed to pay for it; that, acting under this agreement, appellant sold the scrap iron for the amount appellee had agreed to pay for it, thereby saving to appellee the $50 which he had put up as a forfeit. Appellant further alleged that on the day the agreement stated was entered into appellee purchased from him 50 bushels of apples at $1.10 per bushel, and paid thereon $32 cash, leaving a balance of $23 due appellant; that after deducting this balance appellant was indebted to appellee in the sum of $47, which he tendered to appellee before the fil-

ing of this suit, and which was by appellee refused.

The case was submitted to the jury on a general charge, and the jury returned a general verdict in favor of appellee for the sum of $145, less the $23 alleged by appellant to be due on the purchase of the apples. Judgment in accordance with the verdict of the jury was rendered, and the appellant perfected an appeal to this court.

[1] The first assignment of error is to the effect that the trial court erred in permitting the appellee to testify that between the time of his purchase and the time of appellant's alleged conversion the price of scrap iron had advanced. The admission of this testimony furnishes no sufficient ground for a reversal of the case. The substance of appellant's objections to its admission was that such testimony could not properly be received to prove the market value of the property alleged to have been converted on the day of the alleged conversion, and while it may be conceded that ordinarily such is the rule, yet the qualification of the bill of exceptions reserved to the court's ruling shows that the testimony complained of was offered and admitted, not for the purpose of showing the market value of the scrap iron, but to be considered by the jury only in so far as it might tend to show a reason for the alleged conversion of the scrap iron by the appellant. It was not error, we think, to admit the testimony for that purpose, and it is not likely that the jury considered it for any other purpose to the prejudice of appellant's rights.

[2-4] The second assignment of error complains of the court's action in admitting in evidence two letters dated Ft. Worth, Tex., December 4, 1916, and December 9, 1916, respectively, addressed to the appellee at Mexia, Tex., and purporting to have been signed by Missouri Iron & Metal Company, per L. Cohn. The letter of December 4, 1916, so far as is necessary to state, is as follows:

"We have yours of recent date, and as per your request we are inclosing you a price list on metals, rubbers, and rags. If our prices are satisfactory they must be accepted by return mail and ship immediately. For good country mixed iron clean from all light material we can pay you $7.25 per net ton f. o. b. Mexia, Texas, if loaded on T. & B. V. You must have 40,000 pounds and over."

The letter dated December 9, 1916, reads thus:

"We have yours of recent date and will give you $7.50 per net ton for good 'country iron, free from uncut boilers steel ranges and all other light and worthless material. You may ship the car to the Colorado Fuel & Iron Co., Minnequa, Colorado, route T. & B. V. Ft. Worth & Denver and C. & S. This car must be loaded in open coal car. We will honor your draft at the rate of 90 per cent., balance of your money when we get reports from the mill. If this is satisfactory please advise us by return mail."

These letters were introduced by appellee for the purpose of showing the market value of the scrap iron at the time and place of the alleged conversion. They were inadmis-

sible for that purpose, and, so far as disclosed by the record, for any other purpose, and should have been excluded. The market value of the scrap iron was a controverted issue, and could be established only by competent evidence. The offer of the authors of the letters in question to pay appellee the amount stated therein is not such evidence. They constitute simply the private communication of the writer's willingness to pay appellee for scrap iron similar to that involved in this suit, $7.50 per ton in the one instance, $7.25 in the other, upon certain conditions, and are strictly ex parte. They do not even purport to state the market value of such iron. The conditions referred to, as expressed in the letter of December 4, 1916, are that the scrap iron should be "good country mixed iron, clean from all light material," loaded on cars, not at Teague, Tex., where the conversion complained of is alleged to have occurred, but at Mexia, Tex.; that there must be 40,000 pounds of the iron or more; and that the offer be accepted by return mail, and the iron shipped immediately. As expressed in the letter of December 9, 1916, the conditions are that the iron be loaded, as required in the letter of December 4th, on cars at Mexia, Tex.; that it be "good country iron, free from uncut boilers steel ranges and all light and worthless material"; that it be loaded in open coal cars; that only 90 per cent. of the purchase price be paid cash; and that notification of the acceptance of the proposition be given by return mail. Furthermore, it does not appear that the writer of the letters was acquainted with the market value of the scrap iron alleged to have been converted by appellant at Teague, Tex., the place of conversion, on the date it is alleged to have been converted, and hence qualified to give testimony of such value. The rule is too well established to require the citation of authority that in cases of conversion of personal property the market value of the property at the place and on the day of conversion is essential to a recovery, and that a witness called to testify as to such value must, as a prerequisite to the admission of his testimony, show that he was acquainted with the market value of the property at such time and place. It has been held that evidence of isolated sales or offers to sell are not admissible to establish market value. Hammond v. Decker, 46 Tex. Civ. App. 232, 102 S. W. 453. Likewise offers to purchase at a certain price are not admissible. The extent to which the contents of these letters may have influenced the jury in arriving at their verdict cannot be known. But they were inadmissible, and if they had any weight, it likely prejudiced the rights of appellant. At all events, we are not prepared to say their admission was harmless. The fact that it was developed on cross-examination that appellee had the letters in his pocket and was called on by appellant's attorney to let him see them, and then proceeded to ask some

questions as to the appellee's knowledge as to who wrote them, etc., did not authorize their submission in evidence by the appellee. The record shows without dispute that appellant objected all the time to their introduction.

[5] There are assignments of error complaining of matters that were not embraced in appellant's motion for a new trial in the court below. They will not therefore be considered. We will take occasion to say, however, that if the case is again tried, the court's charge should more accurately conform to the pleadings and evidence than does the charge found in the record now before us.

For the error indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.