CROFT, APPELLANT, *v.* THURSTON, RESPONDENT.

(No. 6,451.)

(Submitted April 1, 1929. Decided April 20, 1929.)

[276 Pac. 950.]

*Mr. Ralph J. Anderson* and *Mr. E. K. Cheadle*, for Appellant, submitted a brief and argued the cause orally.

*Messrs. Ayers & Ayers* and *Mr. Earl Wineman*, for Respondent, submitted a brief; *Mr. Roy E. Ayers* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal taken from a judgment rendered on a verdict for defendant in an action for alleged libel.

The complaint alleges that defendant as the owner and publisher of the Judith Basin County Press, a weekly newspaper published at Stanford, published therein on July 22, 1926, of and concerning the plaintiff, who was then the treasurer of Judith Basin county, the following four articles:

1. "One item of the report, referred to as Claim No. 12115, by James M. Croft, county treasurer, calls the attention of the board to the fact that Mr. Croft illegally collected $33.90 as commission on the payment of interest in July, 1925. The practice of a county treasurer collecting commissions, according to the report, is prohibited by section 3 of Chapter 92 of the 1925 Session Laws. For what the commission was paid is not stated in the report. Whether for paying more interest than was due, or for some other special favor, the report does not state."

2. "Where any county official collects a commission for the payment of interest, or any other commission—regardless of

the purpose—and puts the commission in his own pocket or gives it to another, it is graft, and there is no other interpretation for it.''

3. "The shortage of Murray Dolliver, which was paid back in full several months ago, has never been credited on the treasurer's books. Neither are several other credits ordered by the state examiner and the county attorney pertaining to the Bousted administration, according to the report. What has become of the $1,200 paid back by Dolliver and the credits due the Bousted administration we do not know. If these credits were properly made, according to the county attorney, the Bousted administration would be approximately $400 over, instead of short.''

4. "Thus we have a slight insight into the reason why Harvey, Hinkle, Ltd., are so peeved at this paper—we learned of their little game and exposed them. Hinkle is no longer posting tax notices at $8.00 per. Certainly he should be peeved. Harvey is scared stiff. Croft will be defeated. And thus he will lose his own meal ticket. They are all strenuously laboring to induce the voters to retain Croft. It is a debt they owe him for allowing them to 'use' his office. Hinkle has used it, according to his own confession in a resolution introduced by him and now a matter of record, to collect fees for posting tax notices, and 'Blackie' of course, he has to live—he will not work—Croft is his angel. He draws his pay from the treasurer's budget, which was $6,000 greater last year than ever before.''

The answer admits the publishing of the articles. As an affirmative defense, it sets forth, in substance. that at the time of the publication the plaintiff was a candidate for the office of county treasurer; that prior to the publication complained of a deputy state examiner had made an examination of the office of county treasurer of Judith Basin county and submitted his report to the county commissioners and county attorney; and that the comments and criticisms contained in the publication complained of are a true and just account of

such report of the deputy state examiner; and that the statements published are true and were matters of public interest and therefore privileged; and that the publication was without malice.

Because of the nature of the questions presented on this appeal, a review of the evidence introduced in the case is unnecessary.

1. Plaintiff predicates error upon the action of the court in overruling his objection to the introduction in evidence of ▊▊ the records in two cases brought by the county of Judith Basin, one of which was against B. B. Hinkle and the other against Ethel C. Hirsch. From these records it appears that each of the defendants in those actions was a member of the board of county commissioners of Judith Basin county, and that the actions were brought to recover alleged illegal fees collected by them from the county. These actions were commenced prior to, and were pending at the time of, the publication in question. The records of the *Hirsch Case* consisted of a complaint, affidavit of service, summons, demurrer to complaint, notice of hearing of demurrer, and proof of service thereof, order overruling demurrer, answer to complaint, amended complaint, and proof of service, demurrer to amended complaint, notice of hearing of demurrer to amended complaint, answer to amended complaint, reply, and praecipe for dismissal without prejudice. The record in the *Hinkle Case* contained the same papers, and, in addition, an amended answer, demurrer thereto, and ruling thereon, and a second amended answer. The complaint and amended complaint in the *Hirsch Case* were based upon alleged illegal fees for expenses incurred in inspecting courthouses and other buildings in various counties in Montana, for viewing roads and bridges, and for other purposes not necessary to here state in full. The complaint and amended complaint in the *Hinkle Case* were very similar to those in the *Hirsch Case*, but additionally they included, as alleged illegal fees, items for per diem for posting tax notices at eight dollars per day and expenses.

Objection to the introduction of these records was upon the grounds that the same were irrelevant, incompetent and immaterial.

Defendant contends that the records were admissible:

First, because plaintiff opened the door for their introduction in evidence by the cross-examination of defendant, during which plaintiff elicited the following testimony: "The suit against Hinkle was brought about the first of June, 1926; it involved some of the items mentioned in my article of July 22nd. This suit has since been dismissed. * * * Another suit was instituted against county commissioner Hirsch about that time. I had no part in causing those suits to be brought further than the information that was in the examiner's report and in the attorney general's report. I did not urge the bringing of these suits. I talked the matter over and said it was time to correct it. I talked with Mr. Muzzy about bringing these suits against Mr. Hinkle and Mrs. Hirsch, the county commissioners. I suggested that suits should be brought against them."

We recognize the rule that, where one party cross-examines a witness as to a transaction, the witness may be re-examined for the purpose of bringing out such further portions of the transaction as tend to explain the portion already in evidence. (Jones' Commentaries on Evidence, 2d ed., sec. 2460.) But the same author, in the same section, says in substance that statements as to wholly independent matters, which do not relate to or explain the testimony already given, are inadmissible. The publication here complained of made reference to Mr. Hinkle and the fact of his "Posting tax notices at $8 per." The items in the complaint in the action against Mr. Hinkle relating to such charges were admissible, since the cross-examination elicited the fact that some of the items involved in the action were mentioned in the publication complained of. (*Fitzpatrick* v. *State*, 37 Tex. Cr. Rep. 20, 38 S. W. 806; *Bunkers* v. *Peters*, 122 Minn. 130, 141 N. W. 1118.) However, the cross-examination was not 'of such a character as to per-

mit the introduction of the whole record in the two cases on redirect examination.

It should be noted that on cross-examination no part of the record of these actions was introduced in evidence by plaintiff so as to make the whole on the subject admissible by defendant, within the meaning of section 10515, Revised Codes of 1921. The rule applicable here was applied by the supreme court of California in *People* v. *Eman,* 111 Cal. 144, 43 Pac. 520. In that case, on cross-examination, a paper was presented to a witness, and he was asked to identify certain items contained in it, but neither the items nor the paper were introduced in evidence. The court held that, on redirect examination, the paper was erroneously admitted in evidence. And, where a witness on cross-examination testified that he had made a memorandum of a certain transaction, the adversary was not entitled to introduce the memorandum in evidence upon redirect examination. (*Avery* v. *Mattice,* 56 Hun, 639, 9 N. Y. Supp. 166.) To the same effect is *Waldrop* v. *Goltzman* (Tex. Civ. App.), 202 S. W. 335.

Second: It is contended by defendant that these records were admissible for the purpose of negativing malice and establishing the defense of privilege. It is pointed out by him that plaintiff, in seeking to show malice, brought out on the cross-examination of defendant that he did not publish statements shown in the examiner's report on shortages in other county offices. The records in these cases against Hirsch and Hinkle could not aid the jury in arriving at the conclusion that the publication concerning Croft was without malice or privileged. The defendant, of course, on redirect examination, could properly explain his connection with those cases, but the entire record in each case was not admissible for any purpose. The court erred in overruling plaintiff's objection to the introduction of these records.

We have carefully considered the entire record in this case as well as the records introduced in the *Hirsch* and *Hinkle Cases,* and are of the opinion that the introduction of the lat-

ter records was prejudicial to the substantal rights of plaintiff, and, in consequence, a new trial must be granted.

2. By another specification of error it is contended by plaintiff that the court erred in admitting evidence of the witness Mrs. Korell, to the effect that she agreed to pay and did pay to Mrs. Croft (plaintiff's wife) the sum of $10 per month, for several months, as a consideration for her employment as deputy treasurer.

As before stated, plaintiff at the time of the publication in question was the county treasurer of Judith Basin county. His wife was an employee in the office. The witness, Mrs. Korell, was a deputy from October 1, 1925, until the end of plaintiff's term as treasurer. Mrs. Korell was permitted to testify, over the objection of plaintiff, that she paid to Mrs. Croft the sum of $10 per month as a gift or donation during the time she was employed as such deputy. It is contended by plaintiff that this evidence was inadmissible for the reason that it was not binding upon the plaintiff without proof that he had knowledge of the arrangement or consented thereto. The court permitted the testimony to be introduced subject to the right of plaintiff to have it stricken out on motion, if plaintiff was not connected with the arrangement. After all of the evidence on the subject was introduced by defendant, plaintiff made a motion to strike such evidence from the record, and this was denied. The denial of that motion is also assigned as error. These two assignments of error raise practically the same question, viz.: Was there sufficient evidence tending to connect the plaintiff with the arrangement whereby Mrs. Korell was to pay $10 monthly to plaintiff's wife, to justify the court in overruling the motion to strike the testimony relating thereto and to submit the evidence to the jury?

The record shows that Mrs. Korell went to work as deputy for plaintiff at the suggestion of Mrs. Croft. Mrs. Croft said it was customary to give the wife of the chief a present. Witness Korell consented to do so and paid the sum of $10

monthly, usually on the first of the month. Sometimes the witness would not pay this sum promptly on the first of the month. In May, 1926, it was unpaid until about the middle of the month. Mrs. Korell testified that, whenever she would not pay promptly on the first of the month, Mr. Croft seemed angry. She further testified: "After I made the monthly payment to Mrs. Croft, Croft would be all right. When I was delinquent in any monthly payment, Croft would snap me up every little while and I suppose that was the reason, and after I made the payment he would be very nice." In the month of May, the witness said that Croft said to her: "Mrs. Korell, do you have a letter or anything to send to my wife this morning?" The witness replied that she had, and wrote a check and had Croft cash it, and she then put the money in an envelope and gave it to Croft. She testified: "His attitude towards me the rest of that month was all right."

This evidence was sufficient to make a prima facie case that plaintiff knew of the arrangement for the payment of a commission.

3. It is likewise contended by plaintiff that such evidence was not admissible under the pleadings, for the reason that the publication complained of made no reference to such misconduct as that testified to by Mrs. Korell.

The complaint complains of the following publication: "Where any county official collects a commission for the payment of interest, or any other commission—regardless of the purpose—and puts the commission in his own pocket or gives it to another, it is graft, and there is no other interpretation for it." By way of innuendo the complaint then alleged: "Meaning thereby that the plaintiff, as treasurer of said Judith Basin county, had illegally collected a commission for the payment of interest, and had appropriated the same to his own use, and that the plaintiff was guilty of graft, and of illegal conduct in the administration of his said office of county treasurer of said Judith Basin county."

Where the truth is relied upon by the defendant in a libel action, he must justify the publication in the sense in which the innuendo explains it, unless the innuendo places a forced construction on the words used. (Newell on Slander and Libel, p. 793; 37 C. J. 45; *Pyper* v. *Jennings,* 47 Cal. App. 623, 191 Pac. 565.) The rule is that a charge of a specific act of misconduct cannot be supported by proof of other acts of misconduct of a similar nature. (37 C. J. 86, note 58.) But, where the imputation is general, defendant is entitled to prove specific acts showing the truth of the imputations. (37 C. J. 86, notes 51 to 53; *Davis* v. *Lyon,* 91 N. C. 444; *Adams* v. *Ward,* 1 Stew. (Ala.) 42; *Talmadge* v. *Baker,* 22 Wis. 596; *Ratcliffe* v. *Louisville Courier-Journal Co.,* 99 Ky. 416, 36 S. W. 177; *Lanpher* v. *Clark,* 149 N. Y. 472, 44 N. E. 182; *Quaid* v. *Tipton,* 21 Tex. Civ. App. 131, 51 S. W. 264.) And, where the truth is relied upon in a civil action, the motive and purpose of the publication are immaterial. (Newell on Slander and Libel, sec. 956.)

Whether, under the complaint in this case when read with the innuendo, the charge is a specific one (i. e., for collecting commission for the payment of interest), or a general one, embracing any commission for any purpose, presents a difficult question. Since, for the reasons already stated, a new trial must be had, this question can be eliminated by applying for and obtaining leave of court to amend the answer so as specifically to present the Korell transaction as an issue in the case.

The judgment is reversed, and the cause remanded for a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and GALEN concur.

MR. JUSTICE FORD: I dissent. I agree with the majority opinion that the court erred in admitting in evidence the records in the *Hinkle* and *Hirsch Cases,* but in my opinion this was harmless error, and plaintiff was not prejudiced thereby.

Counsel for plaintiff developed upon the cross-examination of defendant that he had on several occasions suggested to the county attorney that the actions against Hinkle and Hirsch to recover illegal fees be filed, that they were filed and later dismissed. It is obvious that plaintiff considered this beneficial to himself and tantamount to an admission on the part of the county attorney that the actions were not justified and that the allegations of the complaints were without foundation in fact. These were separate and distinct actions involving entirely different questions. Croft was not a party to the actions, and was not connected with, nor in any manner involved in, the collection of the alleged illegal fees described in the complaints and other files admitted in evidence. How, then, can it reasonably be said that this evidence was of sufficient substantial value to justify the reversal of the judgment or warrant the conclusion that the final result would have been different had the ruling complained of been otherwise?

The court must disregard any error "which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error." (Sec. 9191, Rev. Codes 1921.) In *Dockins* v. *Dockins*, 82 Mont. 218, 266 Pac. 398, this court, speaking through Mr. Justice Galen, said: "In entering upon the consideration of an appeal this court always indulges the presumption that the decision of the trial court is correct, and the burden rests upon the appellant to show reversible error. * * * On appeal prejudice is never presumed, and in order to work a reversal it must affirmatively appear that substantial rights have been affected by the error assigned." And in the case of *Montana Livestock Co.* v. *Stewart*, 58 Mont. 221, 190 Pac. 985, this court said: "An appellate court will not reverse a judgment merely because the lower court erred; it is only when the error has materially affected the appellant's rights on the merits of the case."

In the trial of almost every case more or less technical error intervenes in the admission or exclusion of testimony. Such

error is not ground for reversal unless it affirmatively appears that the rights of the parties have been prejudiced by it. (*White* v. *Chicago etc. Ry. Co.*, 49 Mont. 419, 143 Pac. 561.)

After a most careful consideration of the record I cannot force myself to the conclusion that the evidence in question materially affected plaintiff's rights on the merits of the case; to do so would be to presume prejudice and thus reflect upon the intelligence of the jury.