STATE, Respondent, *v.* COLLETT, Appellant.
No. 8598
Submitted March 1, 1946. Decided March 30, 1946.
167 Pac. (2d) 584

H. C. Crippen, of Billings, for appellant.

R. V. Bottomly, Atty. Gen., Clarence Hanley, Asst. Atty. Gen., and R. F. Hibbs and Melvin Hoiness, Co. Attys., both of Billings, for respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Defendant was convicted of the crime of selling liquor to a minor. His motion for a new trial was denied and he appealed from the judgment and order denying the motion for new trial.

The evidence was in sharp conflict. That which sustains the verdict may be summarized as follows: Three Mexican boys named Valentine Deavilla, Marco Rivera and Isobel Rodriquez, ranging from 11 to 13 years of age and who resided on the "South Side" in Billings, were found in a room at the Butte Hotel in Billings on March 17, 1943. Valentine had been given some money with which to buy shoes. Instead of buying shoes the three boys met and secured a room in the hotel. Isobel was sent out for beer, carrying with him a note written by Marco. He returned with a half gallon and a quart of beer. After this was consumed Isobel was sent for some wine. He again carried a note written by Marco reading, "Please give my son a quart of wine." Marco signed his brother's name to the note. Isobel

received the liquor from defendant and paid him for it, requesting and receiving a statement from defendant as to the cost of the wine. Marco accompanied Isobel as far as the back door of defendant's saloon but did not witness the transaction. The boys had two dogs with them in the hotel room. The dogs started fighting and the hotel manager called the police. Two policemen responded to the call and found the bottle of wine and beer containers in the room. The boys were ordered to go home but before reaching home the policemen overtook them and brought them to defendant's place of business. There Isobel stated that defendant sold him the wine and the defendant denied having done so.

The witness Isobel admitted that he had made statements that he did not get the wine from defendant but secured it from some one in defendant's place of business but explained that he made these statements because he had been told that if he did not say that "some fellow got the wine" for him at defendant's place of business they would send him to the reform school.

The first assignment of error predicated by defendant is that he was unduly restricted in the cross-examination of state's witness Isobel Rodriquez. On direct examination the witness told of the purchase of the wine and beer from defendant on March 17th and that he was then 12 years of age. On cross-examination counsel for defendant developed the fact that on September 4, 1943, two policemen caught the witness and Marco with a bottle of beer in their possession in a South Side alley and that on that occasion he had told the officers that he got the bottle of wine some five months earlier through a fellow in defendant's place of business. He was then asked: "And this bottle of beer you had, you had stolen from the Pioneer Saloon, had you not." That question was objected to as improper cross-examination and the objection was sustained. This ruling was assigned as error. Defendant contends that he should have been allowed to impeach the state's principal witness in this manner. There are several reasons why the court properly sus-

tained the objection. In the first place a witness may not be impeached by evidence of particular wrongful acts. Sec. 10668, Rev. Codes. It related to a matter entirely foreign to anything developed on direct examination. The rule is that a witness may not be impeached by contradicting him on collateral matters. State v. McConville, 64 Mont. 302, 209 Pac. 987. Also, when defendant interrogates a state's witness on cross-examination on a matter not touched upon on direct examination, he makes the witness his own and in such a situation the rule is that, subject to certain exceptions not present here, he would have been bound by his testimony and would not have been permitted to impeach the witness on that matter.. State v. Richardson, 63 Mont. 322, 207 Pac. 124. A negative answer by the witness would have ended the inquiry. The rule is grounded upon the premise that the court will not permit a criminal action to be transformed into a proceeding wherein the witness rather than the defendant is placed on trial.

The next two assignments of error are predicated upon the court's action in overruling defendant's objections to questions propounded on re-direct examination of Isobel. The witness had admitted that he told a different story—and one which was not true—on another occasion and was then asked whether what he testified to in court was the truth. To this defendant objected. The court did not commit prejudicial error in permitting the witness to answer. True it was in the nature of a self-serving conclusion, but it was but reaffirmation of what the witness promises to do when he takes the oath as a witness. Whether it was the truth or not was for the jury to determine and it is not likely that the jury felt in any way bound by the assertion of the witness that he was telling the truth in court.

The other point complained of arose out of the following proceedings. The witness Isobel had given testimony at a preliminary hearing before the Justice of the Peace. On his re-direct examination portions of his testimony given before the Justice of the Peace were read to him and he was then

asked: "Is that what you told the court before?" This was objected to as leading. We fail to see where this question was subject to the objection that it was leading. But if so, it does not follow that the ruling necessitates a reversal of the judgment. Leading questions are sometimes permitted in the discretion of the court in the interests of justice. Sec. 10663, Rev. Codes; and see 70 C. J. 524 and 531, 532. In view of the age of the witness, his lack of education, lack of familiarity with court proceedings and his limited use of the English language as shown by the record, the court did not abuse its discretion in permitting leading questions.

The next question arises from the following facts. On the cross-examination of Isobel he gave an affirmative answer to the following questions: "On or about the 1st day of March, at least some two weeks or better before the date when you say you got this wine, you and Valentine, one or the other of you boys here, had in your possession five half-gallon jugs of beer, one broke in front of the drug store, Mr. Smith and Dewey Brey came up and asked you where you got the beer, you replied that you got it from Casey, and afterward on examination you admitted that you had got it from the X Bar—is not that true?

Counsel for defendant then read extracts from the testimony of the witness given at the preliminary hearing before the Justice of the Peace, which the witness admitted he signed in the presence of the judge and in which he stated in substance that he didn't remember anything about the incident relating to the beer on or about the 1st day of March. In passing it should be noted from what we have already said that this evidence was inadmissible as bearing upon a collateral matter and should have been excluded. But the question before us is the propriety of receiving evidence offered by the state on redirect examination designed to offset the effect of that thus developed by defendant on cross-examination.

Counsel for the state on re-direct examination of the witness Isobel over the objection of defendant, was permitted to read further extracts from the testimony given before the Justice of

the Peace, the substance of which was to show that at that hearing the witness gave the same testimony with reference to the purchase of the wine of March 17th as he gave at the trial of the instant case before the jury.

The state contends that this evidence was admissible under section 10515 of our statutes. That section reads: "When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing, which is necessary to make it understood, may also be given in evidence."

Where, as here, part of the testimony given by a witness at the preliminary hearing, and which was reduced to writing, is given in evidence on cross-examination, the state is permitted on re-direct to introduce the whole of the writing, subject to the limitation stated in section 10515 that it is all "on the same subject." Zibbell v. Southern Pac. Co., 160 Cal. 237, 116 Pac. 513; Moore v. Re, 131 Cal. App. 557, 22 Pac. (2d) 45; Wilder v. People, 86 Colo. 35, 278 Pac. 594, 65 A. L. R. 1260; Bancroft's Code Pleading, Practice & Remedies, Vol. 3 Supp., p. 2019, sec. 1333; 20 Am. Jur., "Evidence," sec. 276; VII Wigmore on Evidence, 3d Ed., sec. 2113; and see Croft v. Thurston, 84 Mont. 510, 276 Pac. 950. Here, that part of the testimony given before the Justice of the Peace and introduced by the state in this case had no connection with the part introduced by defendant. It was not admissible under section 10515 because it was not on the same subject. The part introduced by defendant had to do with beer found in the possession of the witness on March 1st and what he had stated in regard to it, whereas that offered by the state related to what he had stated concerning wine in his possession on March 17th.

The evidence complained of was not admissible under section 10515, Revised Codes. Whether it was admissible under some other theory we need not determine because even if it

were inadmissible on any theory it would not follow that the judgment would have to be reversed. "The erroneous admission of evidence is not reversible error unless it is prejudicial." 3 Am. Jur. "Appeal & Error," sec. 1027, p. 576 et seq., and see 5 C. J. S., Appeal & Error, sec. 1715, p. 931 et seq. and see sec. 12125, Rev. Codes. It cannot be said that the evidence complained of affected any substantial right of defendant. Isobel testified directly to everything contained in the writing. The declarations contained in the writing added nothing to what he already had testified to from the witness stand. The fact that the witness at some other time made a statement corresponding with what he stated on the witness stand adds nothing to the state's case. It is still for the jury to determine the credibility of the witness, and the weight of his testimony is not affected by the fact that he himself on a prior occasion made the same statement now testified to by him.

Defendant contends that his motion for new trial upon the ground of newly discovered evidence should have been granted. In support of the motion defendant submitted an affidavit by E. A. Kautsky and one by his attorney, H. C. Crippen, which show that state's witness Isobel Rodriquez made statements at other times inconsistent with his testimony in the case as to the times when he had conversations with officer James W. Smith and as to what was said to Smith by Isobel about causing the latter to be sent to the reform school if he did not say that he gave the money to a man in Collett's place of business and that this man bought the wine on March 17, 1943. There were other affidavits purporting to show that defendant has his wine bottles labeled with a price tag. The new evidence is either cumulative or serves merely to impeach the state's witness. The general rule is that a new trial will not be granted for newly discovered evidence when the new evidence is merely cumulative or tends only to impeach the character or credit of a witness. State v. Matkins, 45 Mont. 58, 121 Pac. 881. To this general rule there is the exception that a new trial will be granted when cumulative evidence becomes so overwhelm-

ingly convincing as to compel the conclusion that to sustain the verdict would amount to a gross injustice, or the impeaching evidence demonstrates perjury in the witness upon whose evidence the verdict is founded. State v. Matkins, supra, and State v. Belland, 59 Mont. 540, 197 Pac. 841.

The trial court has a wide discretion in granting or refusing a new trial for newly discovered evidence and a new trial will not be granted unless the newly discovered evidence makes it probable that a different result will be produced upon a retrial. State v. Hardee, 28 Mont. 18, 72 Pac. 39; State v. Poole, 68 Mont. 178, 216 Pac. 798; and see 23 C. J. S., Criminal Law, sec. 1461.

We cannot say that the court abused its discretion in denying defendant's motion for a new trial. The judgment and order appealed from are affirmed.

Mr. Chief Justice Johnson and Associate Justices Morris, Adair and Cheadle concur.