No. 13709

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

STATE OF MONTANA,

        Plaintiff and Respondent,

    -vs-

LESLIE CAMPBELL,

        Defendant and Appellant.

---

Appeal from:  District Court of the Second Judicial District,
              Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

    For Appellant:

        J. Brian Tierney argued, Butte, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Allen B. Chronister argued, Assistant Attorney General,
         Helena, Montana
        John G. Winston, County Attorney, Butte, Montana
        Craig Phillips argued, Deputy County Attorney, Butte,
         Montana

---

                              Submitted:  May 1 , 1978
                                Decided:  JUL 2f 1978

Filed:  JUL 2f 1978

_Thomas J. Kearney_
                                            Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The defendant was tried for the crime of theft by a jury in Silver Bow County, Judge Freebourn presiding. From a verdict of guilty and the court's admission of certain hearsay evidence, he appeals.

On February 2, 1976, Butte police officers entered a residence at 1112 South Main Street in Butte pursuant to a search warrant based on information supplied by Dale Nix. Nix, an informant for the police, was the lessee of the residence at the address named in the search warrant. No one was at home at the time the police entered the residence, but the defendant's wife, Cindy and sister, Barbara Campbell Nix arrived and were present during the search. The police seized numerous items of property traced to a series of burglaries in the Butte area during the preceding October and November.

Later, the police arrested the defendant on February 20, 1976 and charged him with felony theft under section 94-6-302 (1)(a), R.C.M. 1947.

During the trial, Nix did not testify as a witness, but statements made by him to police officers were admitted through testimony of police officers. These statements included alleged participation of the defendant in the burglaries. Also produced at trial was evidence showing that Nix had been paying rent and residing at the searched residence from August 1975 through January 1976. Around January 26, 1976, Nix was severely burned in an accident and hospitalized. During Nix's hospitalization, the landlord of the premises went to the house to collect rent and received one month's payment from defendant who was there at the time.

Three city officers testified concerning the defendant's occupancy of the searched residence. Officer James Lunney stated he had seen "all the Campbell's" at the residence at various times along with numerous other individuals, but he could not say exactly when and how long prior to the search he had seen the defendant there. He stated he "knew basically who was there just from stopping and talking" with the individuals who allegedly resided at the house. The officer admitted, however, defendant "could have been" living next door in the large home of his mother. Another officer, Pat Burns, also stated he "had seen (the defendant) there." This officer pointed out that the driving records of the defendant indicated that both in November, 1975 and February, 1976, defendant had used the address of the residence in connection with a traffic violation and an application to renew his drivers license. Finally, Officer Dan Hollis testified he had spoken with the defendant at the residence around October 29, 1975.

We find two of the issues raised to be dispositive:

(1) Whether the evidence was legally sufficient to support the verdict, and

(2) Whether the Court erred in allowing the jury to consider certain hearsay evidence.

Since we agree with defendant's contentions both as to the legal insufficiency of the evidence and the inadmissibility of the hearsay evidence considered, the other issues cited on appeal will not be addressed.

The crime with which defendant was charged is defined in section 94-6-302(1)(a), R.C.M. 1947:

> "Theft. (1) A person commits the offense
> of theft when he <u>purposely or knowingly</u>
> <u>obtains or exerts unauthorized control</u>
> over property of the owner and:
> (a) has the purpose of depriving the
> owner of the property;
> * * *." (Emphasis added)

thereto as well as the accused, it cannot be said that the property was in the accused's exclusive possession <u>and the circumstance would not be evidence of his guilt.</u>" (Emphasis added). People v. <u>Davis</u> (1966), 69 Ill.App.2d 120, 216 N.E.2d 490, 493.

While it is true that exclusive possession may be shared with others, possession must still be proved. As stated in <u>Davis</u>, supra:

" * * * Mere association with a stolen article is not necessarily the possession of that article, and before any inference of guilt can arise from the circumstance <u>it must be shown that the accused was in possession.</u>" (Emphasis added). 216 N.E.2d at 493.

Clearly, the State showed no more than "mere association" of the defendant with the stolen goods; thus it failed to prove the essential element of control over the stolen property required for conviction of the crime.

The only evidence linking the defendant to the stolen goods was certain statements allegedly made by the informer Nix to the police officers. The officers testified that Nix told them defendant participated in the burglaries. Had Nix testified, his testimony would have to be corroborated to establish an element of the crime. Section 94-2-107(3), R.C.M. 1947. But Nix did not testify. The testimony of the officers as to what Nix told them was hearsay. It was an out-of-court statement introduced for the truth of the matter stated, with neither inherent guarantee of trustworthiness nor a satisfactory showing of declarant's unavailability. The exclusionary hearsay rule is intended to protect against the infirmities of statements made without the safeguards of an oath, confrontation, and cross-examination to test the credibility of the out-of-court declarant. None of these safeguards are present here.

We find unconvincing the State's argument that by questioning the officers as to the informant's name and involvement in the

Control over the property of another is an essential element of the offense and is generally defined in section 94-2-101(33), R.C.M. 1947:

> "'Obtains or exerts control' includes but is not limited to the taking, carrying away, or sale, conveyance, transfer of title to, interest in, or possession of property." (Emphasis added)

The State contends that control over the stolen goods was established by showing defendant's regular occupancy of the residence in which the stolen property was seized. The evidence offered on the point however, was inconclusive.

The fact of defendant's continuing occupancy of the residence searched rests on circumstantial evidence, the testimony of the three police officers and the fact that the defendant once paid rent for the premises. While the testimony shows defendant may have been present at the house on certain occasions, it does not conclusively prove his regular occupancy of or his control over the premises and its contents during the period in which the burglaries occurred or prior to the search. Likewise, the fact that the defendant at one time paid rent for the premises while Nix, the lessee, was hospitalized does not justify the conclusion that defendant actually resided at or had control over the house and its contents.

Montana's theft statute is derived from and is substantially the same as Ill. Crim. Code Chptr. 38, section 16-1. In construing that provision their Courts hold:

> " * * * possession of stolen goods may be proved by circumstantial evidence. (Citation omitted). However, in order that recent possession be evidence of guilt it must be exclusive in the accused. The possession must be such as to indicate that the accused and not someone else took the property. If the place where the property is found is such that another person could have had access

-4-

burglaries, defense counsel "opened the door" to testimony regarding defendant's participation in the burglaries. The issues are separate. The so-called "completeness doctrine" relied on by the State in this regard is a rule of evidence distinct from the hearsay rule. The rule is contained in section 93-401-11, R.C.M. 1947 (and is substantially the same in Rule 106 of M.R.Evid.).

The doctrine stems from elementary principles restricting the scope of cross-examination. Generally, cross-examination of a witness must be limited to matters testified to on direct examination. The doctrine of completeness is an offshoot of this rudimentary principle. It permits examination of the balance or portions of the same document, correspondence, or conversation only where such portions on balance "are relevant and throw light upon parts already admitted;" U.S. v. Littwin (6 Cir. 1964), 338 F.2d 141, 146; or bear "on the same subject;" State v. Collett (1946), 118 Mont. 473, 479, 167 P.2d 584, 587. To say that here, defendant's line of inquiry "opened the door" to all hearsay communications between the officers and the informer under the completeness doctrine is to misapply the doctrine. The testimony of the officers regarding what Nix told them was a classic example of inadmissible hearsay. The prejudice is patent.

The conviction is reversed and the case ordered dismissed.

_____
Daniel J. Shea
Justice

We Concur:

_____
Frank I. Haswell
Chief Justice

_____
John Conway Harrison

_____

_____
John C. Sheehy
Justices

-6-