No. 96-172

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DOUGLAS CASTLE,

Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Vernon E. Woodward, Hendrickson, Everson, Noenning & Woodward,
Billings, Montana

For Respondent:

Dennis Paxinos, Yellowstone County Attorney; Joseph P. Mazurek,
Attorney General, Cregg W. Coughlin, Assistant Attorney General,
Helena,
Montana

Heard: June 17, 1997
Submitted: June 19, 1997

Decided:   November 13, 1997
Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.


Douglas Castle (appellant) appeals from a jury verdict and judgment of the Thirteenth Judicial District Court, Yellowstone County convicting him of deliberate homicide. We reverse and remand.

Appellant raises two issues on appeal.

1. Did the District Court err when it refused appellant's proposed instruction that assault is a lesser included offense of deliberate homicide?

2. Did the admission of Cassell's hearsay statements violate the Montana Rules of Evidence?

FACTUAL BACKGROUND

On November 18, 1994, John Formo (Formo) was murdered. His body was discovered the next morning in a dumpster in an alleyway behind the 500 block of Birch Avenue in Laurel, Montana. Detectives from the Yellowstone County Sheriff's Department and police officers from the Laurel Police Department who investigated the scene noticed a trail of blood in the snow leading to the dumpster from the backdoor of a house located at 506 Birch Avenue. They thus took the occupants of that house into custody, including Michelle Herren, who was disabled and was the tenant of the home, Walter Cassell, Thomas "Bear" Baker, Forrest "Snake" Snyder, and appellant Douglas Castle.

Appellant initially denied having any knowledge of Formo's death. During subsequent questioning by Detective Jensen, however, he stated that he and Snyder or "Snake" had met Formo near the railroad tracks earlier during the day of November 18, where they drank alcohol. Appellant estimated they drank for about an hour and a half, and then went to the house on Birch Street where they continued drinking. He told Detective Jensen that while they were drinking at that house, Formo said "Fuck the FTRA," which upset him. "FTRA" stands for the Freight Train Riders of America, of which appellant claimed to be a member. Snyder then hit Formo several times while the two stood in the kitchen area. Appellant admitted that he also then went into the kitchen and punched Formo three times in the jaw and once on the side of the head. When he hit Formo, Formo began bleeding in the jaw area. Appellant then went to the bathroom.

When appellant came out of the bathroom, Formo was lying on the living room floor in front of the couch. Appellant watched Cassell walk into the kitchen and come out with a knife. Cassell proceeded to stab Formo numerous times. Appellant also saw Cassell kick Formo once in the head.

When Cassell finished stabbing Formo, it was not yet dark. Appellant estimated that they thus waited about 30 minutes before attempting to place Formo in a garbage bag. When they were unable to do so, Cassell and he carried the body outside and placed it in the dumpster behind the house. Appellant claims that Formo was dead when they put the body in the dumpster.

Detective Jensen also questioned Cassell, who made a statement. According to Cassell, everyone present at the house was drinking the night of the murder. Snyder, Baker and Formo were in the kitchen, and Formo broke a window. Baker then hit Formo. Next, appellant walked into the kitchen and hit Formo. After being punched, Formo walked into the living room, where Cassell confessed that he began beating Formo. When he beat Formo, blood went everywhere. Cassell further confessed that he then went into the kitchen, got a knife, came back and stabbed Formo. Later, appellant and he carried the body to the dumpster. At first, Cassell stated that Formo was dead when they took him to the dumpster. However, he later stated that Formo was still alive, and that appellant was going to cut Formo's throat.

The State subsequently charged appellant by information with deliberate homicide.

Appellant pleaded not guilty. He filed a motion in limine to exclude certain hearsay statements of Cassell that implicated appellant. The District Court denied the motion.

Appellant also offered a proposed jury instruction regarding the offense of assault. His theory of the case was that he was guilty only of assaulting, but not murdering, Formo.

The District Court refused the proposed instruction. Following a jury trial, appellant was found guilty of deliberate homicide and was sentenced to 60 years in prison. He now appeals.

ISSUE ONE

Did the District Court err when it refused appellant's proposed instruction that assault is a lesser included offense of deliberate homicide?

It is a fundamental rule in this state that a criminal defendant is entitled to jury instructions that cover every issue or theory having support in the evidence. State v. Gopher (1981), 194 Mont. 227, 229, 633 P.2d 1195, 1196 (citing State v. Buckley (1976), 171 Mont. 238, 557 P.2d 283.) A defendant may be convicted only of the "greatest included offense about which there is no reasonable doubt." Section 46-16-606, MCA. A defendant is therefore entitled to an instruction on a lesser included offense if any evidence exists in the record from which the jury could rationally find him guilty of the lesser offense and acquit of the greater. Section 46-16-607(2), MCA; State v. Fisch (1994), 266 Mont. 520, 522, 881 P.2d 626, 628. The purpose of this rule is to ensure reliability in the fact-finding process. It avoids the situation where the jury, convinced that the defendant is guilty of some crime, although not necessarily the crime charged, convicts the defendant rather than let his action go unpunished simply because the

only alternative was acquittal.  Gopher, 633 P.2d at 1197-98.

Appellant maintains that the very harm that the rule seeks to avoid occurred in this case when the District Court refused his proposed jury instruction on assault.  He contends that under õ 46-1-202(8)(c), assault is a lesser included offense of deliberate homicide and that evidence at trial supported his defense that he was guilty only of assaulting, but not murdering, the victim.  Alternatively, he argues that even if assault is not necessarily a lesser "included" offense of a deliberate homicide, it is a lesser "related" offense and as such he was entitled to the instruction.  In support of that alternative argument he cites Keeble v. United States (1973), 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844; People v. Williams (Mich. 1985), 374 N.W.2d 158; and People v. Geiger (Cal. 1984), 674 P.2d 1303.  He maintains there was a legitimate question as to causation of the murder and that the District Court "gutted" his defense by refusing his instruction.

The State, on the other hand, argues that the trial court did not err in refusing to instruct the jury on the offense of assault, because assault is not a lesser included offense of deliberate homicide.  It contends that this Court has not adopted the "inherent relationship" test found in Keeble.  Instead this Court applies the test announced in Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct.180, 76 L.Ed.2d 306 to determine whether an alleged lesser offense is included within the greater offense.  State v. Steffes (1994), 269 Mont. 214, 232, 887 P.2d 1196, 1207.  Under that test, the court 'looks to the statutory elements of the respective crimes to determine if each offense requires proof of a fact which the other does not . . . ."  Steffes, 887 P.2d at 1207.  The State argues that the Blockburger test is not satisfied because deliberate homicide requires proof that a person purposely or knowingly causes the death of another, while assault is committed when the person purposely or knowingly causes bodily injury to another.  Sections 45-5-102 and 45-5-201, MCA.  Because each requires proof of an element that the other does not, assault is not a lesser included offense.

Upon reviewing this case, we must first determine whether, as a matter of law, assault is a lesser included or a lesser related offense of deliberate homicide.  If it is, we must then determine whether appellant's proposed instruction was supported by the evidence.  State v. Greywater (Mont. 1997), 939 P.2d 975, 977, 54 St.Rep. 16, 18 (citation omitted).

The State is correct in noting that this Court has adopted the so-called Blockburger test.  But the statutory definition of "included offense" contained at õ 46-1-202 (8), MCA,

is broader than the Blockburger test.  That statute contains three alternative definitions of "included offense."  Subsection (8)(a) of that statute defines "included offense"  as one that "is established by proof of the same or less than all the facts required to establish the commission of the offense charged."   Section 46-1-202(8)(a), MCA.  As we explained in Fisch, a proper analysis of whether an offense is an "included offense" under that subsection would include an application of the  Blockburger test.  Fisch, 881 P.2d at 629.

At issue in this case, however, is whether the assault is an included offense under subsection 8(c).  That subsection defines "included offense" as one that 'differs from the offense charged only in the respect that a less serious injury or risk to the same person, . . . or a lesser kind of culpability suffices to establish its commission."  Section 46-1-202(8)(c), MCA.  We addressed that statutory definition for the first time in Fisch, where we held that under that subsection, an offense is a lesser included offense if it differs from the one charged only by way of a less serious injury or a less serious risk or a lesser kind of culpability.  Fisch, 881 P.2d at 628.

One commits the crime of deliberate homicide if he "purposely or knowingly causes the death of another human being."  Section 45-5-102(1)(a), MCA.   One commits assault if he "purposely or knowingly causes bodily injury to another."  Section 45-5-201(1)(a), MCA.  The only difference between the two is that a "less serious injury. . . suffices to establish" the crime of assault.  Section 46-1-202(8)(c), MCA.   This Court thus holds that under the express terms of subsection 8(c), assault is an included offense of the crime of deliberate homicide.  Because this Court holds that assault is indeed a lesser included offense, the Court need not reach appellant's alternative argument that the instruction should be given because assault is a lesser "related" offense.

Although this Court holds that assault is an included offense, that does not mean that an instruction on this offense must be given every time a defendant is charged with deliberate homicide.  Rather, there must be some basis from which a jury could rationally conclude that the defendant is guilty of the lesser, but not the greater offense.  In this case, there was evidence supporting the theory of the defense that appellant was guilty only of assaulting, but not of murdering Formo.

Kenneth Mueller, M.D., the pathologist who examined Formo, testified that the

causes of death were stabbing and severe blunt force injuries to Formo's head. Formo had 16 stab wounds. The blows to Formo's head fractured his skull and caused his brain to hemorrhage, resulting in subdural hematoma. The type of blows that caused this injury were not simple punches or even the type that would normally be inflicted by a boxer. Rather, they were the type one would expect if the victim was hit in the head with an instrument such as a bat or if the victim's head was supported on one side by the ground or a wall. According to Dr. Mueller, those injuries probably would have quickly rendered Formo unconscious and incapable of any voluntary movements.

This medical evidence is consistent with appellant's defense that although he punched Formo in the jaw while they were standing in the kitchen, those blows amounted only to assault and did not cause his death. At that time, Formo's head was not supported by the ground or the wall. Moreover, evidence indicates that Formo remained conscious and walked to the living room. Thus appellant's punches did not fracture the skull or cause subdural hematoma. Evidence indicates that it was Cassell who dealt the fatal blows and multiple stab wounds while Formo lay on the living room floor.

The State argues that Formo was still alive when appellant helped Cassell discard the body in the dumpster. Although Dr. Mueller testified that Formo may have lived up to one or two hours after receiving the severe blows to the head, he also testified that he could have died within 15 minutes and that at least one stab wound on Formo's lower buttocks was consistent with a post-mortem wound. The position of Formo's body in the dumpster was such that the stab wound could not have been inflicted after the body was placed in the dumpster. This evidence, is consistent with the defense's theory that Formo died before he was placed in the dumpster.

We conclude that there is some evidence that supports appellant's theory that he is guilty only of assaulting, but not murdering, Formo. A jury could rationally find that appellant committed assault, but not deliberate homicide. It is possible that the jury found appellant guilty of deliberate homicide rather than let his admitted crime go unpunished. Appellant is thus entitled to a new jury trial with his proposed instruction on the offense of assault.

The judgment of the District Court is reversed, and the sentence is vacated. The cause is remanded for a new trial.

ISSUE TWO

Did the admission of Cassell's hearsay statements violate the Montana Rules of Evidence?

Appellant contends that the District Court erred in admitting certain portions of Cassell's confession.  During the investigation following the murder of Formo, Detective Jensen had tape-recorded two interviews with Cassell in which Cassell admitted to stabbing and beating Formo and also implicated appellant.  Cassell subsequently invoked his Fifth Amendment Right against self-incrimination and did not testify at trial.  The District Court allowed Jensen to read the following portions of the transcript of Cassell's interview to the jury:

Q:     [by Jensen]Okay, Walt, why don't you tell us what happened last night?

A:     [by Cassell]Here it comes.  We were all drinking.  We were all fucked up with -- we'd been drinking a lot of wine, a lot of beer.  Forrest was in the kitchen with the guy.  He said he was fucking up and I was driving Michelle to the store.  I came back and the next I know Forrest and him fucking around in the kitchen and then the guy broke the window.

Q:     Who broke the window?

A:     The other guy, he broke the fucking window and then -- let me try and get this straight.  I don't know, then -- Bear went in there, hit him a few times and then Doug went in there and hit him a few more times so he come out in the living room and I beat on him man and blood went everywhere.  Then I went and got the knife and stabbed him and stabbed him.

Q:     Where did you stab him at?

A:     I thought a kidney stab.

Q:     What kind of knife did you use?

A:     Butcher knife of some sort.  I don't know.

Q:     Where is that knife at?

A:     I don't know.

Q:     Then what happened?

A:     Then we thought he was dead and we tried putting him in a bag, took him outside, threw him in the fucking dumpster.  Doug was going to cut his throat and make sure he was dead.

Q:     Was he still moving when you tried to put him in this bag?

A:     Yeah, he was still trying to reach out of the bag and get out of the

bag.  He was still alive.

Q:    What did Doug say then?    Did he say anything?

A:    He said, "I don't care.  I'll take the fucking rap."

Q:    You and Doug carried him outside?

A:    Yeah.

Appellant does not object to the portions of the statement wherein Cassell admitted beating and stabbing Formo.  Indeed, it was he who sought their admission on the grounds that they constituted statements against Cassell's penal interest and should therefore be admitted under the hearsay exception found in Rule 804(b)(3), M.R.Evid.  He objects only to the following hearsay statements wherein Cassell implicates him:

(1)  Then we thought he was dead and we tried putting him in a bag, took him outside, threw him in the fucking dumpster.  Doug was going to cut his throat and make sure he was dead.

(2)  Yeah, he was still trying to reach out of the bag and get out of the bag.  He was still alive.

(3)  He [Doug Castle] said, "I don't care.  I'll take the fucking rap."

Neither party disputes that those statements constitute hearsay within the meaning of Rule 801, M.R.Evid, and neither party disputes that the declarant Cassell was "unavailable" within the meaning of Rule 804, M.R.Evid.  Appellant argues that the statements do not fall within any of the hearsay exceptions in Rules 803 and 804 and are therefore inadmissible under Rule 802, M.R.Evid.  Moreover, he contends that admitting those statements violated his rights to confrontation guaranteed by the Sixth Amendment to the United States Constitution and by Article II, Section 24, Constitution of Montana.  He maintains that the statements lack any separate indicia of reliability, because in fact the victim's throat was not slashed; medical testimony indicates that after sustaining the blows to his head, the victim was incapable of making voluntary movements; and the victim died prior to being placed in the dumpster.

The State, on the other hand, contends that the statements are admissible under Rule 804(b)(3), M.R.Evid., because they constitute statements against penal interest.  It further argues those statements are admissible even without corroborating evidence, because the last line of Rule 804(b)(3) requires corroborating circumstances only when the declarant's statement exculpates the accused.  In this case Cassell's statements inculpate the accused.  Finally, it notes that certain parts of the statements, such as the statement that the body was thrown into the dumpster, are corroborated, and that the

uncorroborated portions do not prejudice appellant.

Rule 804(b)(3) provides an exception to the hearsay rule where a declarant makes a statement which "at the time of its making . . . so far tended to subject the declarant to . . . criminal liability. . . that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true."  Rule 804(b)(3), M.R.Evid.  To fall within the exception embodied in that rule, the declarant's statements must thus be against his own penal interest. That portions of a declarant's confession are admissible because they are self-inculpatory, however, does not necessarily make the collateral non-inculpatory statements either credible or admissible, particularly where the declarant implicates another person.  In this regard, the United States Supreme Court's decision in Williamson v. United States (1994), 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476, is instructive.  In that case, the Supreme Court examined Fed.R.Evid. 804(b)(3), which is identical in pertinent parts to Montana's rule.  The Court held that the exception embodied in Rule 804(b)(3) does not extend to non-self-inculpatory statements, even if they are made within the context of a confession.  As the Supreme Court stated:

Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true. . . . The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts.  One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.

. . .

In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.  The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.

Williamson, 512 U.S. at 599-601.

In this case, Cassell's statements wherein he confessed to beating and stabbing the victim fall squarely into the exception, because they tend to subject him to criminal liability.  However, in other parts of his statement, Cassell shifts the blame to appellant by implying that it was appellant and not he who actually killed the victim.  Specifically, he states Formo was still alive when they dumped the body in the dumpster and it was appellant who volunteered to "take the . . . rap" by cutting the victim's throat and ensuring the victim was dead.  These statements are classic examples of inadmissible hearsay.  They lack any indicia of trustworthiness.  That Formo's throat was not in

fact
cut only highlights the unreliability of such statements.  Moreover, appellant was denied
the valuable right to cross-examine the only witness who provided any direct evidence that appellant intended Formo's death.

Of the challenged statements, Cassell's statement that they tried putting the victim's body in a bag and then threw him in the dumpster is the only one that is self-inculpatory.
However, that statement should be redacted to delete appellant's alleged involvement.

Because we find that the admission of these statements violated the Montana Rules of Evidence, we need not address whether their admission violates the Confrontation Clause of the Sixth Amendment to the United States Constitution and Article II, Section 24, Constitution of Montana.

Although these statements do not fall within Rule 804(b)(3)'s purview, the District Court held that Cassell's statements were admissible under Rule 106, M.R.Evid.  The State had contended that under the rule of completeness, if the District Court admitted the portion of Cassell's statement wherein he admitted beating and stabbing Formo, it should also admit the other parts of the statement wherein he implicated appellant, so as not to mislead the jury into believing that Cassell had declared sole responsibility for the crime.

Rule 106, M.R.Evid., provides in part:

Remainder of or related acts, writings, or statements.

(a)  When part of an act, declaration, conversation, writing or recorded statement or series thereof is introduced by a party;

(1)  an adverse party may require the introduction at that time of any other part of such item or series thereof which ought in fairness to be considered at that time; or

(2)  an adverse party may inquire into or introduce any other part of such item of evidence or series thereof.

The completeness doctrine stems from the principle restricting the scope of cross-examination to matters testified to on direct examination.  It broadens this principle by allowing an immediate introduction of the balance of portions of the same document, correspondence or conversation, where fairness so dictates.  State v. Campbell (1978), 178 Mont. 15, 19, 582 P.2d 783, 785.  The balance is admitted only where it is relevant and more fully explains or provides context to parts already admitted.  Campbell, 582 P.2d at 785 (citing U.S. v. Littwin (6th Cir. 1964), 338 F.2d 141, 146; State v. Collett (1946), 118 Mont. 473, 479, 167 P.2d 584, 587).

Rule 106 does not, however, provide a separate basis for admissibility.  As we

stated in Campbell, this rule is separate and distinct from the hearsay rule. Campbell, 582 P.2d at 785. In that case we held that the defendant's line of inquiry to an informant did not open the door to all hearsay communications under this doctrine. Campbell, 582 P.2d at 785. Rule 106 does not make admissible statements that would otherwise be inadmissible. We therefore hold that the District Court erred in admitting the enumerated hearsay statements. Because we have already held that this case should be reversed, we need not reach the issue of whether the admission of those statements constituted reversible error.

Reversed and remanded for further proceedings consistent with this opinion.


/S/   WILLIAM E. HUNT, SR.

We Concur:

/S/  TERRY N. TRIEWEILER
/S/  JIM REGNIER
/S/  W. WILLIAM LEAPHART


Justice Karla M. Gray, concurring in part and dissenting in part.


I concur in the Court's opinion on issue two, regarding the inadmissibility of certain of Cassell's statements. I dissent from that opinion, both procedurally and substantively, on issue one, whether the District Court erred in refusing appellant's proposed instruction that assault is a lesser included offense of deliberate homicide.

Procedurally, it is my view that appellant waived the õ 46-1-202(8)(c), MCA, argument on which the Court resolves the first issue by not raising it in the District Court. Appellant conceded in this Court, as he did in the District Court, that simple assault is not an "included offense" of deliberate homicide under the Blockburger test we use in applying õ 46-1-202(8)(a), MCA. Thus, the Court quite correctly does not address the Blockburger test. The Court is incorrect, however, in stating that the issue here "is whether the assault is an included offense under subsection (8)(c) [of õ 46-1-202, MCA]." In the District Court, and in his opening brief on appeal to this Court, appellant relied on the "related offense"--or "cognate offense"--theory for his argument that he was entitled to a lesser included offense instruction in this case, an argument similar to the one we rejected in State v. Smith (1996), 276 Mont. 434, 916 P.2d 773. The record

reflects, and appellant conceded during oral argument, that he did not raise õ 46-1-202(8)(c), MCA, in the District Court and raised it here for the first time only in his reply brief.  On this procedural background, we are precluded from addressing the subsection (8)(c) argument for two reasons.  The first is that a party may not change the theory on appeal from that advanced in the district court.  State v. Fisch (1994), 266 Mont. 520, 524, 881 P.2d 626, 629 (citation omitted).  The second is that a reply brief "must be confined to new matter raised in the brief of the respondent."  Rule 23(c), M.R.App.P.  For both of these reasons, it is my view that we must decline to address appellant's argument under õ 46-1-202(8)(c), MCA.

Indeed, Fisch is controlling on this procedural waiver.  There, the defendant was charged with aggravated assault and offered a proposed instruction that negligent endangerment is a lesser included offense of aggravated assault under õ 46-1-202(8)(c), MCA.  Fisch, 881 P.2d at 627-28.  The district court refused the instruction and we held that it was correct in doing so.  Fisch, 881 P.2d at 629.  The defendant also argued that negligent endangerment is a lesser included offense of aggravated assault under õ 46-1-202(8)(a), MCA.  We observed that he had not offered the instruction pursuant to õ 46-1-202(8)(a), MCA, in the district court and cited to State v. Henderson (1994), 265 Mont. 454, 458, 877 P.2d 1013, 1016, for the long-established axiom that a party may not change the theory on appeal from that advanced in the district court.  On that basis, we declined to address the argument presented under õ 46-1-202(8)(a), MCA.   Fisch, 881 P.2d at 629.

The present case requires the same response as Fisch.  Appellant having failed to advance his õ 46-1-202(8)(c), MCA, argument in the District Court, we must decline to address it here.  To reverse a trial court on a basis never presented to it for resolution--as the Court does here with its õ 46-1-202(8)(c), MCA, analysis--is both contrary to the law and unfair to the District Court.  I cannot agree.

Substantively, and even if õ 46-1-202(8)(c), MCA, were at issue here, I also disagree with the Court's conclusion that a simple assault is merely a "less serious injury" than a deliberate homicide.  It is clear that "bodily injury" as defined in õ 45-2-101(5), MCA, is a "less serious injury" than "serious bodily injury" as defined in õ 45-2-101(64), MCA.  Thus, the "less serious injury" concept in õ 46-1-202(8)(c), MCA, is clearly and easily applied in the context of various assault offenses under Part 2, Assault, of Chapter

5, Offenses Against the Person, of Title 45, Crimes.

It is my view, however, that the "bodily injury" required for a simple assault is most assuredly not a "less serious injury" than deliberate homicide.  While homicide may be perceived by some as the "ultimate injury," death is not an injury of the most serious type but, rather, death is death and it is in a category of its own.  The very structure and organization of the Offenses Against the Person contained in the MCA support this view.  The offense of deliberate homicide is not set forth as the first and foremost offense in Part 2 of Chapter 5 of Title 45, which delineates the various types of assaults.  Rather, the offense of deliberate homicide is the first offense defined in Part 1 of Chapter 5, Offenses Against the Person, of Title 45, Crimes.  Indeed, Part 1 is entitled "Homicide," and the various homicide offenses are therein grouped together, to the exclusion of other types of offenses.  Each of those defined offenses addresses the "death of another human being;" none includes the word "injury."  See õõ 45-5-102 through 45-5-104, MCA.  Nothing in that Part suggests or indicates that a "death" properly can be likened to an assault with the only difference being the degree of "injury."  Indeed, the compartmentalization of the homicide offenses away from the assault offenses reflects the legislature's perception and intent that a homicide is not merely a more serious injury than a simple assault.

I would affirm the District Court's refusal of appellant's proposed lesser included offense instruction on assault.

/S/  KARLA M. GRAY

Justice James C. Nelson joins in the foregoing concurring and dissenting opinion of Justice Karla M. Gray.

/S/  JAMES C. NELSON

Chief Justice J. A. Turnage, dissenting:

I join in the foregoing concurring and dissenting opinion of Justice Karla M. Gray.

In addition to the well-reasoned opinion of Justice Gray in dissenting to Issue One, which is clearly supported by the statutes and precedent cited therein, I write to

express
my further concern about the majority discussion of this issue.

The standard of review for jury instructions is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. State v. Leyba (1996), 276 Mont. 45, 51, 915 P.2d 794, 797. The district court is given broad discretion in instructing the jury. State v. Long (1995), 274 Mont. 228, 234, 907 P.2d 945, 948.

The majority opinion, when reduced to its fundamental holding, states that in this trial for deliberate homicide under õ 45-5-102(1), MCA ("[a] person commits the offense of deliberate homicide if: (a) the person purposely or knowingly causes the death of another human being . . ."), punishable by not more than 100 years imprisonment in the state prison, the jury must be instructed that if any evidence exists in the record on which it may base a finding of the lesser included offense of simple assault, a misdemeanor under õ 45-5-201(1)(a) or (c), MCA ("[a] person commits the offense of assault if he: (a) purposely or knowingly causes bodily injury to another; . . . (c) purposely or knowingly makes physical contact of an insulting or provoking nature with any individual . . ."), punishable by a fine of $500 or six months in the county jail, the jury may then proceed to ignore the evidence of the vicious killing of victim Formo and find Castle guilty of a misdemeanor.

The facts of this case leave no room for instructing the jury that appellant Castle's participation in taking the life of John Formo warrants consideration of his conduct as only a misdemeanor assault.

Castle participated in the vicious beating of Formo. Formo suffered multiple blunt force injuries all over his head with bruising and swelling of his face, lips, nose, cheeks, forehead, ears, below the jaw, around the eyes, bruises on his neck from being choked with hands or an instrument, skull fractures in several places due to severe blows to the head and a hemorrhage around his brain causing his death.

After Formo had suffered these injuries, Castle and his partner in this crime, Walter Cassell, waited for approximately thirty minutes for their victim to die before they carried him to a garbage dumpster and placed him inside. The pathologist, Dr. Mueller, testified that Formo survived a minimum of one to two hours after being beaten. The jury had sufficient credible evidence to conclude that Formo was still alive when Castle and Cassell hauled him outside and placed him in the dumpster. In doing so, they assured Formo's death, whereas he may have survived if he had not been subjected to such treatment and had instead received medical care.

Simple assault? Ridiculous. No jury could stretch credulity that far.

An instruction on purse snatching, under these facts, would make as much sense

as an instruction on simple assault.

I would hold that the District Court did not abuse its discretion in refusing to instruct the jury on misdemeanor assault, and that the instructions given fully and fairly instructed the jury on the law applicable to the case.

/S/  J. A.  TURNAGE


Justice Terry N. Trieweiler concurring.

I concur with the result of the majority decision and with the majority's conclusion that assault is a lesser included offense of deliberate homicide pursuant to õ 46-1-202(8)(c), MCA.

However, I do not agree with all that is said in the majority opinion. Specifically, I would not apply analysis from Blockburger v. United States (1932), 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306, to determine whether an offense is an "included offense" pursuant to õ 46-1-202(8)(a), MCA.  The language of Montana's "included offense" statute speaks for itself and does not require the superimposition of federal case law for interpretation.  Furthermore, if federal case law was necessary, Blockburger was not the appropriate case on which to rely.  Blockburger may include language which is relevant to double jeopardy analysis, but it is not applicable to an analysis of "included offenses."

I also disagree with Justice Gray's statement in her dissent that the issue of a "lesser included offense" instruction was not properly submitted to the District Court or raised in this Court.  The defendant submitted a proposed instruction defining assault on the basis that it was a lesser included offense of deliberate homicide.  To suggest that in order to make a proper record he need specify to the District Court the particular subparagraph of the lesser included offense statute pursuant to which the instruction must be given would sacrifice due process to a perceived technicality.  I disagree with that approach.  Furthermore, subsection (8)(c) was properly addressed in the appellant's reply brief pursuant to Rule 23(c), M.R.App.P.  Three pages of the respondent's brief were dedicated to a discussion of whether assault is a "lesser included" offense pursuant to the Blockburger test.  An appropriate response by the appellant included pointing out that it was not necessary to satisfy the Blockburger test which this Court has, in the past, applied to subsection (8)(a) because, in fact, Montana's "lesser included" statute is broader than the Blockburger test.

Finally, it is appropriate to respond to portions of the dissent filed by Chief

Justice

Turnage which are totally unsupported by the record.  When he states that Castle participated in a "vicious beating of Formo" and infers that that beating resulted in the injuries which caused Formo's death, those statements are simply incorrect.  The only evidence regarding Castle's participation in the events which preceded Formo's death establishes that Castle, a person with one arm, struck Formo three to four times with his fist and walked away to go to the bathroom.  When he left Formo, Formo was still standing in the kitchen with no serious injury.  When Castle returned from the bathroom, Formo had apparently been seriously beaten by others and was lying on the floor of the living room next to the couch.  The blunt force injuries, the bruises on Formo's neck, the skull fractures, the hemorrhage around Formo's brain, and the stab wounds which all contributed to Formo's death were admittedly inflicted by Walter Cassell, not the defendant.  The State's own pathologist testified that the blows struck by Castle would not have caused or contributed to Formo's death.  There was no evidence that anything done by Castle caused or contributed to Formo's death.

Furthermore, this dissent's characterization of the evidence regarding the issue of whether Formo was dead or alive when taken to the dumpster is incomplete and misleading.  A complete and accurate description of Dr. Mueller's testimony in that regard is set forth in the majority opinion.

After reciting the aforementioned injuries and inappropriately attributing them to the defendant, the Chief Justice's dissent states:  "Simple assault?  Ridiculous.  No jury could stretch credulity that far."

If Walter Cassell was being tried based on the evidence presented in this case, I would agree.  However, Douglas Castle was being tried and the facts relied on in this dissent are either inapplicable to him or disputed.

Flippant and inflammatory remarks, like those referring to "purse snatching," might make interesting reading to those who are unfamiliar with the facts in this case; however, they are misleading and have no place in an honest discussion of the serious issues presented.

For these reasons, I specially concur with the majority opinion.

/S/  TERRY N. TRIEWEILER