No. 97-119

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

GORDON D. SELLNER,

Defendant and Appellant.


APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Lake,
Honorable C. B. McNeil, Judge Presiding.


COUNSEL OF RECORD:

For Appellant:

Don Vernay, Big Fork, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Pamela P. Collins,
Assistant Attorney General, Helena, Montana

Deborah Kim Christopher, County Attorney; Mitchell A. Young,
Deputy County Attorney, Polson, Montana


Submitted on Briefs: December 16, 1997

Decided: December 29, 1997
Filed:


_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court

In proceedings before the Twentieth Judicial District Court, Lake County, Gordon D. Sellner was charged with attempted deliberate homicide and criminal endangerment. A jury found him guilty of attempted deliberate homicide, and he appeals. We affirm.

Sellner argues that his trial counsel failed to request jury instructions on attempted mitigated deliberate homicide and aggravated assault as lesser included offenses, thus violating Sellner's right to effective assistance of counsel.

BACKGROUND

On the evening of June 27, 1992, a Lake County, Montana, resident called the local sheriff's office to report that he had been assaulted at his home. He identified John Dorin as his assailant. Missoula County Deputy Sheriff Robert Parcell was the closest officer to the scene and the first to respond to the call.

Parcell drove first to Dorin's home and spoke with him. Dorin maintained that he had been working at Sellner's sawmill that day and denied assaulting the victim. Parcell then went to the victim's home, where the victim continued to maintain that it was Dorin who had assaulted him and identified Sellner as a witness. He also told Parcell that the assault had ended after his dog bit Dorin on the face. Two other law enforcement officers, also responding to the victim's phone call, arrived at the victim's house.

The three officers returned to Dorin's home. After questioning him further and noting a wound on his cheek consistent with a dog bite, they arrested him. They then went to Sellner's house to get a statement from him.

Parcell did not know at that time that Sellner had not paid federal income taxes for nearly twenty years as a protest against abortion rights, or that Sellner did not have a driver's license because he believed that he had the right to refuse to enter such contracts with the government. As a result of the positions he had taken on those and other matters, Sellner avoided contact with law enforcement.

Sellner was not home, but his wife told Parcell where he had gone and with whom. Because it was getting late and it was a stormy night, Parcell and the other officers decided to wait until morning to find Sellner and interview him. As they drove away, they saw the vehicle in which they believed Sellner was riding, on the road heading toward Sellner's home. Activating his overhead lights, Parcell pulled the car over. Sellner, who was a passenger in the vehicle, jumped out of the car and fled into the woods. Parcell got out of his vehicle and shouted for Sellner to stop. On his way into the woods, Sellner turned and shot Parcell in the chest with the .41 caliber handgun

which he carried with him.   A brief exchange of gun fire ensued between Sellner and Parcell, ending when Sellner fired into the air before taking off through the woods toward his home.

Because Parcell was wearing a bulletproof vest, he survived the shooting.  The force of the bullet created a gaping wound in his chest, however, and he was transported to the nearest hospital.

For over three years, Sellner remained at large but under surveillance.  He was finally arrested in a July 1995 undercover operation at his home.  During surveillance of Sellner just before his arrest, he fired a gun into the woods where law enforcement officers were stationed.  That incident was the basis for the criminal endangerment charge of which the jury acquitted him.

Before trial, Sellner was referred by the court for a psychological evaluation at the Montana State Hospital.  It was the opinion of the professionals at the State Hospital that Sellner did not suffer from a mental disease or defect and that he retained the ability to act with knowledge and purpose at the time of the charged conduct.   Their report concluded that when Sellner shot Parcell "he felt under extreme stress and may have acted with poor judgment for that reason."  However,  the fearful state of mind Sellner reported when he shot Parcell was "not the result of mental disease or defect but is better understood in the context of his political/religious environment."

Sellner's trial lasted a full week.  He testified on his own behalf that he shot Parcell after he heard a voice in his head say, "He's got his flack jacket on.  Shoot him in the chest and you won't hurt him."  As noted above, the jury found him not guilty of criminal endangerment but guilty of attempted deliberate homicide.  Stating its intent "to provide the maximum protection for the peace officers of this State,"  the court sentenced Sellner to life in prison plus ten years for use of a dangerous weapon.

Discussion

Did Sellner's trial counsel fail to request jury instructions on attempted mitigated deliberate homicide and aggravated assault as lesser included offenses, thus violating Sellner's right to effective assistance of counsel?

Claims of ineffective assistance of counsel are analyzed under the two-part test set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.  To prove ineffective assistance of counsel, the defendant must first establish that his counsel's performance was not within the range of competence demanded of attorneys under similar circumstances.  Strickland, 466 U.S. at 687.  Second, the defendant

must show that but for the inadequate performance of his counsel, the result would have been different. Strickland, 466 U.S. at 694.

Sellner cites õ 46-16-607, MCA, which provides:

(1) The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included in the offense charged.

(2) A lesser included offense instruction must be given when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense.

(3) When a lesser included offense instruction is given, the court shall instruct the jury that it must reach a verdict on the crime charged before it may proceed to a lesser included offense. Upon request of the defendant at the settling of instructions, the court shall instruct the jury that it may consider the lesser included offense if it is unable after reasonable effort to reach a verdict on the greater offense.

Sellner contends that his trial counsel rendered ineffective assistance of counsel in failing to request jury instructions on aggravated assault and attempted mitigated deliberate homicide as lesser included offenses to attempted deliberate homicide. Notwithstanding Sellner's argument on appeal, the record demonstrates that Sellner's trial counsel did request and offer instructions on attempted mitigated deliberate homicide, without objection by the State. The court gave the defense's offered instructions on this subject as Jury Instruction Numbers 9, 10, and 11. Sellner's argument that his trial counsel failed to offer jury instructions on attempted mitigated deliberate homicide is therefore completely baseless.

Attempted deliberate homicide requires proof that the defendant had the purpose to cause the death of another human being and acted toward purposely or knowingly causing the death of another human being. Sections 45-4-103 and 45-5-102, MCA. "Purposely" means it was the defendant's conscious object to engage in that conduct or to cause that result. Section 45-2-101(63), MCA. A person acts knowingly with respect to a given result when the person is aware of a high probability that the result will be caused by the person's conduct. Section 45-2-101(34), MCA.

Aggravated assault is defined at õ 45-5-202(a), MCA: "A person commits the offense of aggravated assault if the person purposely or knowingly causes serious bodily injury to another."

Sellner points out that in State v. Swan (1996), 279 Mont. 483, 928 P.2d 933, this Court interpreted õ 46-16-607, MCA, to require any lesser included offense instruction to be supported by the evidence introduced at trial. He argues that the evidence in

this case warranted and supported a lesser included offense instruction on aggravated assault.

In Swan, this Court ruled that there was no proof that the performance of defendant's counsel was deficient when counsel did not request a lesser included offense instruction on simple assault in a case in which the charge was aggravated assault. Swan, 928 P.2d at 937. We noted that the permanent injuries inflicted on the victim, including scarring on his face, continuous tearing of one eye, and sagging of the eye, were uncontested. We stated that defense counsel "properly interpreted the law in determining that there was not evidence to support a jury finding of the lesser included offense of assault." Swan, 928 P.2d at 937.

After briefing for this appeal was completed, this Court issued its opinion in State v. Castle (Mont. 1997), ___ P.2d ___, 54 St.Rep. 1194. In Castle, the Court held that assault is a lesser included offense of deliberate homicide, but that an instruction on assault must be given only when there is a basis from which a jury could rationally conclude that the defendant is guilty of the lesser, but not the greater, offense. Castle, 54 St.Rep. at 1196. In Castle, there was evidence that injuries inflicted by other persons, not the defendant, caused the victim's death, although it was conceded that Castle caused some injuries to the victim.

In the present case, the evidence introduced at trial would not have supported the giving of an instruction on aggravated assault. Unlike the defendant in Castle, Sellner unequivocally admitted that he, not any other persons, caused the injuries to the victim.

Sellner testified that when he saw the flashing lights on the three vehicles, he figured they were a hit team hired by the government to "wipe me out," although his brother-in-law, who was driving, speculated aloud that perhaps they were being pulled over because he had been speeding. Sellner admitted that he fired the first shot, believing that he was in a life-and-death situation. Sellner testified that he was lying on the ground as he shot at the silhouette of the officer who got out of the car, and that each time the officer (Parcell) fired back at him, he shot again, aiming for the chest.

The physician who treated Parcell in the emergency room testified that had Parcell not been wearing a bulletproof vest, there was a significant risk that the large-caliber

gunshot wound to his chest would have resulted in his death.  Because Parcell was more than thirty miles from the nearest hospital when he was shot, the doctor testified, the bullet would have been lethal if Parcell had not been wearing the bulletproof vest.  A forensics examiner testified that the bullet lodged in Parcell's bulletproof vest was a .41 magnum soft-point bullet and that the purpose of the soft point is to cause more destruction.

The evidence demonstrated that Sellner, a veteran of the Korean Conflict, was experienced with weapons and could be expected to realize the effect of shooting a person in the chest with a .41 magnum soft-point bullet.  From the evidence presented at trial, it would be irrational to conclude that Sellner's shooting of Parcell in the chest with a large caliber soft-point bullet was done with any intent other than to cause a person's death.  Notwithstanding the argument of the dissent, Sellner's statement that a voice told him he would not hurt Parcell if he shot him in the chest would not have supported a conviction of aggravated assault--if anything, it would have supported an acquittal.  We conclude that no jury rationally could have found Sellner guilty of aggravated assault but not guilty of attempted deliberate homicide.

Counsel is not constitutionally required to present an argument which is contrary to the law and which would have been properly overruled.  State v. Hildreth (1994), 267 Mont.  423, 884 P.2d 771.  Because Sellner has failed to demonstrate that the evidence would have  supported the giving of an aggravated assault instruction, he has not established that his counsel's performance was outside the range of competence demanded of attorneys under similar circumstances. Therefore, we need not reach the second prong of the Strickland test, and Sellner's claim of ineffective assistance of counsel fails.

Affirmed.

/S/  J. A.  TURNAGE


We concur:

/S/  TERRY N. TRIEWEILER
/S/  JIM REGNIER
/S/  W. WILLIAM LEAPHART

Justice James C. Nelson dissents.

While, for the reasons set forth in Justice Karla M. Gray's dissent, I did not join the majority in State v. Castle (Mont. 1997), ___ P.2d ___, 54 St. Rep. 1194, our opinion in that case is, nevertheless, now the law of this State and, absent our overruling that decision, we are bound to follow it.  Based upon Castle, I conclude that Sellner's trial counsel rendered ineffective assistance by not offering a lesser included offense instruction on aggravated assault.

In Castle we stated:

A defendant may be convicted only of the "greatest included offense about which there is no reasonable doubt."  Section 46-16-606, MCA.  A defendant is therefore entitled to an instruction on a lesser included offense if any evidence exists in the record from which the jury could rationally find him guilty of the lesser offense and acquit of the greater.  Section 46-16-607(2), MCA; State v. Fisch (1994), 266 Mont. 520, 522, 881 P.2d 626, 628.  The purpose of this rule is to ensure reliability in the fact-finding process.  It avoids the situation where the jury, convinced that the defendant is guilty of some crime, although not necessarily the crime charged, convicts the defendant rather than let his action go unpunished simply because the only alternative was acquittal. [State v.] Gopher [(1981), 194 Mont. 227, 231], 633 P.2d [1195,] 1197-98.

Castle, 54 St. Rep. at 1195-96.

Within the context of those general principles, we then engaged in a two-step analysis.  First, we determined that the offense of assault, õ 45-5-201, MCA (typically charged as a misdemeanor) is a lesser included offense of deliberate homicide, õ 45-5-102, MCA, a felony.  We reached that conclusion by rejecting the State's argument that we simply apply the traditional "elements" test enunciated in Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306.  Instead, we directed our attention to the broader definition of "included offense" contained in õ 46-1-202(8), MCA.  We pointed out that, while subsection 8(a) of this statute included the Blockburger test, subsection 8(c) defines "included offense" as one that "differs from the offense charged only in the respect that a less serious injury or risk to the same person, . . . or a lesser kind of culpability suffices to establish its commission."  We then pointed out that the only difference between assault and deliberate homicide is that þa þless serious injury .  . . suffices to establishþ the crime of assault.þ  Castle, 54 St. Rep. at 1196 (quoting õ 46-1-202(8)(c), MCA).  Accordingly, under the rationale articulated in Castle, the offense

of  aggravated assault is clearly a lesser included offense of deliberate homicide. Like assault, the only difference between aggravated assault and deliberate homicide is that a "less serious injury . . . suffices to establishþ the crime of aggravated assault.

As the second prong of our analysis in Castle, we next focused on whether there was some basis in the evidence from which a jury could rationally conclude that the defendant was guilty of the lesser, but not the greater offense, thus necessitating the giving of the lesser- included-offense instruction.  We answered that inquiry in the affirmative in Castle, and we must, likewise, do so in the case at bar.  As the majority points out, there was evidence presented in the instant case that not only was Sellner acting with poor judgment under extreme stress because of his political/religious environment when he shot at Deputy Parcell, but also that, in his own mind at least, Sellner believed that the Deputy was wearing a flack jacket and that if he shot him in the chest the officer would not be hurt.

While this evidence might be inherently weak and implausible, nevertheless, this was Sellner's theory of defense, and it was up to the jury to decide who and what to believe.  Again,  a defendant is entitled to an instruction on a lesser included offense if any evidence exists in the record from which the jury could rationally find him guilty of the lesser offense and acquit of the greater.  Section 46-16-607(2), MCA; Castle, 54 St. Rep. at 1195; Fisch, 881 P.2d at  628. In my view, and regardless of how I, as a judge, might evaluate this evidence, a jury of twelve lay persons could rationally have concluded that Sellner was not guilty of attempting to kill Deputy Parcell, but, rather, was only guilty of doing or attempting to do him serious bodily injury.  In point of fact, in this very case, after deliberating some ten hours, the jury acquitted Sellner of one of the offenses with which he was charged--i.e., the felony offense of criminal endangerment.

Accordingly, I suggest that the jury's decision was not quite the "slam-dunk" that the majority portrays it to be and that the fact finders should have been given the opportunity to rule on the full range of Sellner's defense theory.

Finally, in the context in which this issue is presented on appeal--ineffective assistance of counsel--I also conclude that, in failing to offer a lesser-included-offense instruction on the basis of aggravated assault,  Sellner's trial counsel (who was not the same person as appellate counsel) was not performing within the range of competence demanded of attorneys under similar circumstances and that, by reason of this inadequate

performance, Sellner suffered prejudice. Strickland v. Washington (1984), 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed. 2d 674.

As to the first Strickland prong--inadequate performance--given the facts of this case and the nature of Sellner's defense; given the black-letter law set out in õõ 46-16-607 and 46-1-202(8)(c), MCA; and given our decision in Fisch, I would hold that the performance of defendant's trial counsel was not commensurate with the range of competence demanded of attorneys under similar circumstances. Keep in mind that Sellner admitted shooting Deputy Parcell and that, absent the jury believing he shot the officer in self-defense and, thus, totally exonerating his conduct on the basis of his "conspiracy" theory, Sellner was, in all probability, going to be convicted of some criminal act. It appears that even Sellner did not hold out much hope for a complete acquittal on the basis of self-defense. Since he also offered an attempted mitigated deliberate homicide lesser-included-offense instruction, he obviously was not pursuing the tactic of trying to force the jury into an "all or nothing" verdict by not offering any lesser-included-offense instructions. Moreover, there was some evidence presented at trial that Sellner was only attempting to injure, rather than kill Deputy Parcell and that his state of mind was consistent with the lesser offense of aggravated assault. Given all of these circumstances, it is hard to imagine why a competent criminal defense attorney would not have offered the lesser-included-offense instruction of aggravated assault. If there was a down side of doing so given the facts of this case, I am hard pressed to determine what it would have been. The jury could still have acquitted Sellner on the basis of justifiable use of force. However, as an alternative to attempted deliberate homicide and attempted mitigated deliberate homicide, they also could have been given the opportunity to consider convicting Sellner of aggravated assault--had the lesser-included- offense instruction been offered. Proposing such an instruction would not have been inconsistent with the evidence or with Sellner's "try for acquittal, but also cover all other bases" trial strategy. If the judge refused to give the offered instruction, the issue would have been preserved for direct appeal; if the judge gave the instruction and the jury found Sellner guilty of a lesser offense of aggravated assault, he would have been subject to a substantially shorter prison term; and if the jury rejected aggravated assault in favor of one of the other two greater crimes, Sellner would have been no worse off than he is now. Offering the lesser-included-offense instruction on aggravated assault was

simply a "win-win" decision; and trial counsel was not performing within the range of competence demanded of attorneys under similar circumstances when he failed to do so.

As to the second prong of Strickland--prejudice--obviously, by reason of his counsel's inadequate performance, Sellner was deprived of any chance to have the jury conclude that he was guilty of a lesser crime than attempted deliberate homicide or attempted mitigated deliberate homicide and of a concomitant opportunity to be not sentenced to life in prison for the former offense or to a 40-year prison term for the latter. Had trial counsel offered the lesser-included-offense instruction, the result of this case may have been a good deal more favorable to Sellner--he may only have been convicted of aggravated assault and subjected to a sentence of 20 years in prison or less.

Hence, prejudice is clearly apparent here.

On the basis of the foregoing, I would hold that Sellner was deprived of effective assistance of counsel, and I would reverse and remand for a new trial. It is said that hard cases make bad law and result-oriented decisions. This is such a case; and we have.

I dissent.

/S/ JAMES C. NELSON


Justices Karla M. Gray and William E. Hunt, Sr., join in the foregoing dissent.


/S/ KARLA M. GRAY
/S/ WILLIAM E. HUNT, SR.