JUSTICE COTTER
dissents.
¶93 I dissent from the Court’s resolution of Issue Two. I would conclude that the District Court’s failure to give an instruction on aggravated assault constitutes reversible error. I would reverse and remand this matter for a new trial.
¶94 It is undisputed that Schmidt and Correia ultimately ended up in a fight outside the Irish Times bar in Butte, and that Correia was on top of Schmidt and hitting him . It is further undisputed that Schmidt pulled a knife out of his pocket and stabbed Correia several times, resulting in his death. However, the evidence and argument was genuinely conflicting regarding who started this fight, what Schmidt’s intentions were in stabbing Correia, and whether Schmidt was truly justified in fearing for his life. While the State maintained that Schmidt attacked Correia in the street, and that Schmidt was not being as badly beaten as he claimed, Schmidt asserted that Correia *303 ambushed him and that he feared for his life. He insisted he never intended to kill Correia, but was rather trying to protect himself from the beating. There were witness accounts on both sides of this issue, and almost every witness who actually saw the fight had been drinking for awhile.
¶95 The State argued at trial that the stab wounds were inflicted with the intent to kill, citing the depth of the stab wounds to Correia. However, on Schmidt’s cross-examination, the State’s forensic expert Dr. Kemp essentially conceded that the depth of the wounds could have been due to Correia leaning into the knife as Schmidt stabbed him from below. This portion of the testimony reads as follows:
Q. But you did indicate that with respect to the wound in the leg that one of the potential causes could have been the individual himself moving; is that correct?
A. That is-yes. Based upon the features that I see in the stab wound, that’s-it’s consistent with somebody with the knife moving in orientation to the skin before it’s removed or with the leg moving in orientation to the knife before it’s removed. There’s several possibilities there, yes.
Q. Now, you had indicated that, I believe, Wounds 1 and 2 were significantly impacted in the chest and the diaphragm area; is that correct?
A. Yes. Those were the two that penetrated into the chest cavity, striking the diaphragm and the heart, yes.
Q. With respect to the depth of those wounds, would it have been possible for someone leaning into the other individual to have those go deeper?
A. Yeah, I mean, if somebody leans against a knife, it can drive the knife deeper into the body. And it would help-yeah. If that answered-yeah, I mean, if somebody’s leaning forward onto something obviously sharp. I mean if somebody just held a knife there and somebody leaned into it like that, once the knife goes through the skin, then it can go in.
¶96 In order to receive the aggravated assault instruction, Schmidt must only present enough evidence to arguably support a conviction of aggravated assault in lieu of deliberate homicide. As this Court stated recently in Adams v. State, 2007 MT 35, 336 Mont. 63, 153 P.3d 601:
A criminal defendant is entitled to jury instructions that cover an issue or theory if there is evidence to support such an instruction. It is fundamental under Montana law that “a defendant is *304 entitled to a jury instruction on a lesser included offense when one of the parties requests it and the record contains evidence from which the jury could rationally find the defendant guilty of the lesser offense and acquit of the greater.”
Adams, ¶ 43 (quoting State v. Beavers, 1999 MT 260, ¶ 23, 296 Mont. 340, 987 P.2d 371). In my view, given the conflicting evidence, Schmidt met this burden.
¶97 In ¶ 47 of the Opinion, the Court suggests that Schmidt could not receive an instruction on aggravated assault because Correia died. However, in State v. Castle, 285 Mont. 363, 948 P.2d 688 (1997), we held, as a matter of law, that assault was a lesser included offense of deliberate homicide. Castle, 285 Mont. at 368-69, 948 P.2d at 691. In Castle, we reasoned as follows:
At issue in this case, however, is whether the assault is an included offense under subsection 8(c). That subsection defines “included offense” as one that “differs from the offense charged only in the respect that a less serious injury or risk to the same person, ... or a lesser kind of culpability suffices to establish its commission.” Section 46-l-202(8)(c), MCA. We addressed that statutory definition for the first time in [State v. Fisch, 266 Mont. 520, 881 P.2d 626 (1994)], where we held that under that subsection, an offense is a lesser included offense if it differs from the one charged only by way of a less serious injury or a less serious risk or a lesser kind of culpability. Fisch, 881 P.2d at 628.
One commits the crime of deliberate homicide if he “purposely or knowingly causes the death of another human being.” Section 45-5-102(l)(a), MCA. One commits assault if he “purposely or knowingly causes bodily injury to another.” Section 45-5-201( l)(a), MCA. The only difference between the two is that a “less serious injury ... suffices to establish” the crime of assault. Section 46-1-202(8)(c), MCA. This Court thus holds that under the express terms of subsection 8(c), assault is an included offense of the crime of deliberate homicide.
Castle, 285 Mont, at 368-69, 948 P.2d at 691. The Court’s Opinion in this case is directly at odds with our reasoning in Castle, and indeed seems to implicitly overrule our holding in that case.
¶98 While admitting he stabbed Correia, Schmidt maintained all along that he did not intend to kill him. The forensic evidence of Correia’s wounds did not foreclose this possibility. Thus, a jury could have rationally found .Schmidt guilty of aggravated assault instead of deliberate homicide or mitigated deliberate homicide. This being so, *305 the instruction on aggravated assault should have been given.
¶99 In this regard, the case sub judice is distinguishable from other cases in which the lesser included offense of aggravated assault was rejected in the context of a deliberate homicide charge. In State v. Sellner, 286 Mont. 397, 951 P.2d 996 (1997), for instance, the Court found that the defendant Sellner was not entitled to a lesser-included offense instruction on aggravated assault when he shot at an oncoming police officer, aiming for his chest. Sellner, 286 Mont. at 402, 951 P.2d at 999. Sellner hit the officer, who would have died but for the fact that he was wearing a bullet-proof vest. The Court concluded that “[fjrom the evidence presented at trial, it would be irrational to conclude that Sellner’s shooting of [Officer] Parcell in the chest with a large caliber soft-point bullet was done with any intent other than to cause a person’s death.” Sellner, 286 Mont. at 402, 951 P.2d at 999.
¶100 In State v. Howell, 1998 MT 20, 287 Mont. 268, 954 P.2d 1102, the defendant was convicted of attempted deliberate homicide. Howell had attempted to intervene in a fight between two individuals at his residence, and held a knife to one of the individual’s (Oliver) throat telling him to get off the other person. Howell, ¶ 9. Howell ended up slitting Oliver’s throat. Howell, ¶ 11. Howell requested an instruction on aggravated assault, which was refused by the district court. Howell challenged the refusal, and this Court affirmed. Howell had argued that he was entitled to the aggravated assault instruction because he didn’t intend to kill Oliver, but rather accidentally slit his throat when Oliver fell on top of him and Howell pulled his arm away. Howell, ¶ 29. The Court rejected this argument as follows:
[I]n this case, the testimony in the record and the medical evidence do not support an instruction on aggravated or felony assault. The injuries inflicted were nearly fatal. The laceration on Oliver’s neck extended through skin, fat, and muscle and was within one millimeter of Oliver’s carotid artery and jugular vein. Dr. Gould testified: “You could not get [a] more uniform [cut] ■without trying.”
The record contains no evidence that Howell intended to inflict bodily injury rather than to cause the death of Oliver. Howell admitted to threatening Oliver with a knife and testified at trial:
I was behind him but I put the knife to his throat and told him to get off, I hadn’t used the knife. Listen, I like Jim Oliver, but when you threaten, you threaten, you show him you mean it or he’s going to get up and kick the shit out of me.
*306 Howell then stated that he did not intend to injure Oliver, but cut him accidentally. This theory, if accepted, would support an acquittal, not a conviction for assault. Therefore, we hold that the District Court did not err in refusing to instruct the jury on aggravated or felony assault.
Howell, ¶¶ 33-34 (emphasis added).
¶101 Here, unlike the situation in Howell, Schmidt concedes he intended to stab Correia; he does not argue that the stabbing was accidental. Moreover, the forensic evidence arguably supports the theory that Schmidt’s intent was to stab, but not to kill, Correia. The record in this case does contain evidence that Schmidt intended to inflict serious bodily injury rather than death. Accordingly, an assault instruction does find support in the facts and Schmidt’s theory of events. Schmidt’s theory, if believed, could result in a jury rationally convicting him of aggravated assault instead of deliberate homicide. Therefore, under Adams, I would conclude that Schmidt was entitled to a lesser included offense instruction to be able to fully present his theory to the jury. As a result of the District Court’s failure to give the requested instruction, the instructions as a whole did not fully and fairly inform the jury of the applicable law. In my judgment, this error warrants reversal and a new trial. I therefore dissent.